**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

DARRYL HOLLAND.

                        Plaintiff,

                        DECISION and ORDER

-vs-

                        05-CV-6295

GLENN GOORD, THOMAS SCHOELLKOPF,
ANTHONY F. ZON and J. BARBARA,

                        Defendants

---

**APPEARANCES**

For plaintiff:                      Darryl Holland, *pro se*
                                       98-A-0319
                                       Five Points Correctional Facility
                                       Caller Box 119
                                       State Route 96
                                       Romulus, NY 14541

For defendants:               Tamara B. Christie, A.A.G.
                                       New York State Attorney General's Office
                                       144 Exchange Boulevard, Suite 200
                                       Rochester, NY 14614

**INTRODUCTION**

**Siragusa, J.** This prisoner civil rights case, brought pursuant to 42 U.S.C. § 1983 (2003), is before the Court on defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

In his form complaint filed on April 3, 2005, plaintiff makes only one claim: that his Constitutional rights under the First, Eighth and Fourteenth Amendments were violated. However, the Court will divide his one claim into three separate causes of action for the analysis of defendants' motion.

As to a first cause of action, plaintiff, who is a practicing Muslim, alleges that he was ordered to undergo a urinalysis by defendant Corrections Officer J. Barbara ("Barbara") on February 5, 2004 at Wende Correctional Facility. (Compl. at 7.) Plaintiff maintains that he was unable to provide a sample because of the fasting requirements of the Islamic holiday of Ramadan. *Id*. In that regard, plaintiff asserts that observance of Ramadan requires that Muslims not eat food or drink water from sunrise to sunset. (Motion in Opposition to Motion to Dismiss (# 12) ("Pl.'s Response"), at 11.)  Additionally, plaintiff maintains that Muslims observing Ramadan are forbidden to expose any private part of their bodies during daytime. (*Id*. at 6.) Consequently, plaintiff states that when he was offered water, he refused to undergo a urinalysis. (Compl. at 7.) Plaintiff was then put in keeplock for violating rule 180.14 (urinalysis testing violation). (*Id*. at 13.) Plaintiff contends that while under keeplock, he was unable to attend Muslim services and classes, and that he was unable to celebrate the end of Ramadan. (*Id.*)

As to a second cause of action, plaintiff alleges that on November 23, 2003, he was subjected to a disciplinary hearing. (*Id.*) Plaintiff asserts he attempted to call the Imam[1] as a witness in this hearing. (Pl.'s Response, at 11.) Plaintiff contends that he wanted the

---

[1] An Imam is defined as "a prayer leader of the mosque." Webster's Dictionary 600 (9th ed. 1991).

Imam to testify that the observance of Ramadan required Muslims to fast and that prohibited them from showing their private parts during the daylight hours. (*Id.*) The hearing resulted in a guilty verdict, and, as a consequence, plaintiff served seventy-seven days in keeplock. (Defs.' Mem. of Law (# 10), at 1.) On January 21, 2004, Superintendent Zon accepted plaintiff's appeal in part, determining that the urinalysis could have been taken after dark, after the fast had ended. (Comp. at 19.)

As to a third cause of action, plaintiff alleges that the above-stated punishments imposed upon him constituted cruel and unusual punishment. (Compl. at 7.) He does not further elaborate on this Eighth Amendment claim.

In their motion to dismiss, defendants argue that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Specifically, they state that: (1) defendants were acting in their official capacity, and all claims against defendants in their official capacity are barred by the Eleventh Amendment, (2) the claims against defendants Goord and Zon should be dismissed because they had no personal involvement; and (3) there was no Due Process violation because plaintiff's confinement did not rise to an atypical and significant hardship required to implicate the Fourteenth Amendment.

## STANDARDS OF LAW

### *Section 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived

plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).

### *Rule 12(b)(6) Standard*

In considering a motion for dismissal under Rule 12, defendant must show that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989); *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (Matthew Bender 3d ed.). "In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir., 1991).The Court must view the complaint, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.*; *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true). Under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "all pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f). On a Rule 12(b)(6) motion, the issue before the Court "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

> Finally, while the plaintiff need not set out in detail the facts upon which he bases a claim, he must provide the "defendant fair notice of the nature of the claim and the grounds upon which it rests." *Washington v. James*, 782 F.2d

> 1134, 1140 (2d Cir. 1986) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 [1957]). Where the allegations are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, they are meaningless as a practical matter and legally insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(*citing Ostrer v. Aronwald*, 567 F.2d 551, 553 [2d Cir. 1977]; *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 [2d Cir. 1972]).

*Parisi v. Coca-Cola Bottling Co.*, 995 F. Supp. 298, 300–01 (E.D.N.Y. 1998).

Complaints prepared by pro se plaintiffs should be construed liberally and held to "'less stringent standards than formal pleadings drafted by lawyers.'" *Scott v. Gardner*, 287 F. Supp. 2d 477, 483 (S.D.N.Y. 2003) (citations omitted). *Pro se* complaints should thus be interpreted "'to raise the strongest arguments that they suggest.'" *Knight v. Keane*, 247 F. Supp. 2d 379, 383 (S.D.N.Y. 2002) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, the complaint "'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983.'" *Torres*, 246 F. Supp. 2d at 338 (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987)).

***First Amendment Standard***

Plaintiff alleges that his First Amendment right to freely exercise his religion has been infringed. As the Second Circuit Court of Appeals held almost thirty years ago in *Burgin v. Henderson*, 536 F.2d 501 (1976):

> it is now common ground that a convicted defendant still has constitutional rights when the prison gate closes behind him . . . . And in the last decade or so, law suits by prisoners of various faiths have resulted in a number of decisions defining their rights . . . . Four years ago, this court held that limitations upon freedom of religion can be imposed only if the state

> regulation has an important objective and the restraint of religious liberty is reasonably adapted to achieving that objective.

*Burgin*, 536 F.2d at 502-03 (quoting *LaReau v. MacDougall*, 473 F.2d 974, 979 (1972)) (other internal citations omitted). More recently, the Court of Appeals held that,

> The reasonableness of a prison regulation is measured by the three-step analysis outlined by the Supreme Court in *Turner* [v. *Safley*, 482 U.S. 78], 89-91 [1987] . . . . First, we ask "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). Second, we look to see "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 417 (citations and internal quotation marks omitted). Third, we examine "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Id.* at 418.

*Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (some citations omitted).

The United States Supreme Court addressed the question of what constitutes a religion for purposes of the First Amendment in the case of *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981). The Court stated:

> the determination of what is a "religious" belief or practice is more often than not a difficult and delicate task, as the division in the Indiana Supreme Court attests. However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.

*Thomas*, 450 U.S. at 714 (footnote omitted).

***Eighth Amendment Standard***

The standard for an Eighth Amendment violation claim is well settled. See *Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993). In that case, the court stated that Eighth Amendment claims comprise both an objective and subjective component. Objectively, plaintiff must establish that the injury is sufficiently serious or harmful enough to reach

constitutional dimensions. *Id.* at 104. Subjectively, plaintiff must prove that defendants acted wantonly. *Id.*

On the objective issue, not every contact is serious enough to reach constitutional dimensions. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). As Judge Friendly wrote in *Glick*, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1982) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

With regard to the subjective component of the test, plaintiff must prove that the defendants acted maliciously. *See Romano v. Howarth*, 998 F.2d 101, 104-05 (2d Cir. 1993). In other words, plaintiff must show that defendants acted wantonly and sadistically to cause harm. *See Brown v. Busch*, 954 F.Supp. 588, 594 (W.D.N.Y. 1997). As the Second Circuit advised in *Romano v. Howarth*,

> To determine whether the defendants acted maliciously, a jury should consider the following factors: the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. If an evaluation of these factors leads the jury to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the jury to find that the defendants acted in a good--faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

*Romano v. Howarth*, 998 F.2d at 105.

***Procedural Due Process Standard***

The Court need not conduct an analysis of whether the protective procedures afforded to plaintiff at his disciplinary hearing passed constitutional muster "unless 'there exists a liberty or property interest which has been interfered with by the State.'"[2] *Carter v. Carriero*, 905 F. Supp. 99, 103 (W.D.N.Y. 1995) (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). Whether a prison inmate has received procedural due process involves a "two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner cannot claim a protected liberty interest unless he demonstrates that he was subjected to "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. To meet the *Sandin* atypical and significant hardship standard, a disciplinary sanction must be clearly "onerous." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d. Cir. 1999).

Although Special Housing Unit ("SHU") confinement may impose hardships that are atypical or significantly different from the burdens of ordinary prison confinement, SHU confinement in New York "generally does not impose [an] atypical and significant hardship

---

[2]Pursuant to 42 U.S.C. § 1997e(a) (2003), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." This section has been interpreted as an affirmative defense, one which is waived if not raised by defendants. See *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999); accord *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999). Defendants have not raised this issue by way of a motion to dismiss, or in their answer, or by the summary judgment motion now before the Court. Thus, the Court finds defendants have waived the exhaustion requirement.

because it remains within the normal range of prison custody." *Trice v. Clark*, No. 94-CV-6871(SAS), 1996 U.S. Dist. LEXIS 6644 at *8 (S.D.N.Y. May 16, 1996); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (plaintiff's sentence fell within expected parameters of sentence imposed by court); *Carter*, 905 F. Supp. 99 (no protected liberty interest in not being assigned to SHU). The Second Circuit has not established a bright-line rule regarding the length or type of disciplinary sanction that meets the *Sandin* standard. However, the Circuit has suggested that SHU confinement for a period of less than 101 days would not meet the standard, and emphasized that when undertaking a *Sandin* analysis, a court must examine "the extent to which the conditions of the disciplinary segregation differ from other routine conditions and . . . the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998); *Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000).

### *Eleventh Amendment Standard*

Defendants raise an Eleventh Amendment defense. The Supreme Court held that a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by he Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165-167 n. 14 (1985).

### *Personal Involvement of Supervisory Officials*

For a claim against state officials in their personal capacity to survive, a plaintiff must demonstrate "personal involvement of defendants in alleged constitutional deprivations . . . ." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); see also *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) ("The rule in this circuit is

that when monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.").

Personal involvement of a supervisory official may be established:

> [B]y evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (alterations in original) (quoting *Colon*, 58 F.3d at 873).

## DISCUSSION

In their motion to dismiss, defendants argue that because plaintiff has sued all defendants in their official capacities only, plaintiff's claims are barred by the Eleventh Amendment. Plaintiff responds that although he listed defendants with their names and titles, he did not specify the capacity in which he was suing them. (Pl.'s Resp. at 5). Even though it appears that plaintiff has sued defendants in their official capacities only, and would therefore be precluded from recovery under § 1983, the Court has an obligation to give a liberal reading to pro se pleadings. Accordingly, the Court will consider plaintiff's claims to have been made against defendants in both their official and personal capacities. The claims against defendants in their official capacities are dismissed as barred by the Eleventh Amendment, and the Court will consider plaintiff's claims against defendants in

their individual capacities on the merits. *See Lovelace v. Peters*, No. 85-cv-8724, 1988 U.S. Dist. LEXIS 5598 at * 3 (N.D. Ill. June 6, 1988).

Defendants Goord and Zon argue that plaintiff's complaint fails to allege specific facts showing that they had personal responsibility for the alleged actions. As discussed above, there are five separate ways to establish personal involvement. First, a plaintiff may assert that the defendants participated directly in the alleged constitutional violation. *Johnson*, 239 F.3d at 254. Here, plaintiff has not stated that either Zon or Goord had any direct participation in a claimed constitutional violation. Second, a plaintiff may assert that the defendants, after being informed of the violation through a report or appeal of the disciplinary action, failed to remedy the wrong. *Id.* Here, upon being informed of the alleged violation through plaintiff's appeal of his disciplinary hearing, Zon accepted plaintiff's grievance in part, resulting in a reversal and expungement. (Compl. at 21.) Plaintiff has not alleged that Goord was informed of the violation. Third, a plaintiff may assert that the defendants created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom. *Id.* Here, plaintiff has not advanced that either Zon or Goord created a policy or custom under which the allegedly unconstitutional practices occurred. Fourth, a plaintiff may assert that the defendants were grossly negligent in supervising subordinates who committed the wrongful acts. *Id.* Here, plaintiff does not allege any facts suggesting that either Zon or Goord was grossly negligent. Fifth, a plaintiff may assert that the defendants exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. *Id.* Here, Zon did act on information of the allegedly unconstitutional act by accepting plaintiff's grievance in part. As to Goord, as indicated above, there is no allegation that he

was ever informed of the conduct of which plaintiff complains. Consequently, since plaintiff has failed to allege personal involvement by either Goord or Zon through any of the five avenues available, his § 1983 claims against them are dismissed.

Next, defendants claim plaintiff has failed to plead a Due Process violation. (Defs.' Mem. of Law, at 4.) As previously indicated, the Second Circuit has suggested that SHU confinements shorter than 101 days are not, in and of themselves, enough to show that conditions suffered by a plaintiff constitute an "atypical and significant hardship" on an inmate in relation to the ordinary incidents of prison life. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Here, plaintiff was sentenced to seventy-seven days in keeplock (Compl. at 7). However, time is not the only factor. The conditions of confinement are an equally important consideration in determining whether a confinement in SHU rises to the level of an "atypical and significant hardship." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Plaintiff claims the time served in keeplock deprived him of "all privileges (TV, phone, packages and commissary)." (Compl. at 7.) He states he was also unable to go to Muslim services and classes and unable to celebrate the end of Ramadan. (*Id*.) Recent case law has helped define what conditions of confinement rise to the level of an "atypical and significant hardship." In *Sealey*, 197 F.3d at 581, the plaintiff alleged that he was confined in SHU to his cell for twenty-three hours per day, could take no more than three showers per week, had limited library privileges and no telephone privileges. Furthermore, he alleged that there was no quiet bell in the SHU, so it was noisy most of the time and on occasion, inmates threw feces at other inmates. *Id*. The *Sealey* court held that these conditions did not rise to a level of "atypical and significant hardship." *Id*. at 589. Likewise, in *Arce v. Walker*, 139 F.3d 329, 332 (2d Cir. 1998) the Second Circuit held that deprivati-

on of exercise and access to communal religious services did not rise to a level of "atypical and significant hardship." Therefore, the Court finds that the allegations in the case at bar do not rise to the standard of "atypical and significant hardship[s]." *McEachin v. Selsky*, No. 9:04-CV-0083, 2005 U.S. Dist. LEXIS 40898 at *33 (N.D.N.Y. March 23, 2005) (loss of packages, commissary and phone are acceptable and normal SHU conditions and not considered unusual and unduly harsh); *Valentino v. Jacobson*, No. 97 Civ. 7615 (WK), 1999 U.S. Dist. LEXIS 368 at *6 (S.D.N.Y. January 14, 1999) (inmate put for 57 days in punitive segregation and denied access to religious services did not amount to an atypical and significant hardship). Accordingly, plaintiff's Due Process claim is also dismissed.

Plaintiff's Eighth Amendment claim is likewise dismissed. Plaintiff alleges no facts which would satisfy either the objective or subjective prong of the standard stated above.

Finally, defendants' alleged limitations upon plaintiff's freedom of religion implicate the First Amendment. As discussed above, defendants must show that the collection of plaintiff's urine sample met an important and neutral objective, that no alternative means were available to meet that objective and that an accommodation would have negatively impacted others (guards and inmates) in the prison. *Shakur*, 391 F.3d at 113. First, defendants make no arguments concerning the governmental objective underlying the uranalysis. Second, defendants had alternative means of collecting plaintiff's urine merely by waiting until sunset, as conceded by Zon in his ruling on plaintiff's appeal to his disciplinary hearing. (Compl. at 19.) Finally, defendants do not contend that an "accommodation would have negatively impacted others (guards and inmates) in the prison." *Shakur*, 391 F.3d at 113. Therefore, the Court finds defendants have not shown

that plaintiff can prove no set of facts in support of his First Amendment claim that would entitle him to relief. Their motion to dismiss that claim is therefore denied.

Upon granting a motion to dismiss for failure to state a claim upon which relief can be granted, it is within the discretion of the district court to allow leave to replead. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); see *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987); *Pross v. Katz*, 784 F.2d 455, 459-60 (2d Cir. 1986). If there is a chance that "the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). Although plaintiff's complaint fails to adequately plead a Due Process and Eighth Amendment violation, the possibility exists that plaintiff could allege sufficient facts to support such claims. Further, this case is in its early stages and no answer has been filed. Accordingly, this Court grants plaintiff leave to replead. However, plaintiff is cautioned that if the amended complaint does not adequately plead constitutional violations, the insufficiently pleaded claims may be dismissed with prejudice.

## CONCLUSION

Defendants' motion (# 9) to dismiss is granted in part. All claims against defendants in their official capacities are dismissed. Additionally, plaintiff's Due Process and Eighth Amendment claims are dismissed, without prejudice. Plaintiff may have until August 7, 2006, to file an amended complaint repleading those claims if he so chooses. Plaintiff is reminded that an amended complaint is meant to **completely replace** the pending

complaint, and thus, he must include his First Amendment claim in any amended complaint he files with the Court.

    IT IS SO ORDERED.

Dated:  July 12, 2006
         Rochester, New York

                ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge