# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

DARRYL HOLLAND,

                      Plaintiff,

-vs-

GOORD, et al.,

                      Defendants.

DECISION AND ORDER

05-CV-6295 CJS

**APPEARANCES**

For Plaintiff:                Darryl Holland, *pro se*
                                  DIN # 98A0319
                                  Five Points Correctional Facility
                                  State Route 96, P.O. Box 119
                                  Romulus, NY 14541

For Defendants:           Tamara Christie, A.A.G.
                                  New York State Office of the Attorney General
                                  144 Exchange Blvd., Suite 200
                                  Rochester, NY 14614

**INTRODUCTION**

      Before the Court is Defendants' motion (# 16) to dismiss Plaintiff's Eighth Amendment claim against all defendants with prejudice and to dismiss the entire amended complaint (# 15) as to Defendants Goord and Zon for lack of personal involvement. For the reasons stated below, the Court denies the motion.

**BACKGROUND**

Plaintiff alleged in his initial complaint that his First Amendment right to practice his religion and his due process rights were violated at Wende Correctional Facility ("Wende") when he was disciplined for failing to provide a urine sample during Ramadan.[1] Plaintiff claimed that he was unable to provide a sample as a result of his fasting pursuant to the requirements of Ramadan. Following Plaintiff's refusal to submit to the urinalysis, a disciplinary hearing was held and Plaintiff was found guilty of the charges and sentenced to 90 days keeplock, 90 days loss of privileges, 90 days loss of commissary, 90 days loss of phone, and 90 days loss of television. (Am. Compl., at Ex. G.) He was released after serving 77[2] days.

Defendants filed a 12(b) motion in lieu of serving an answer to the original complaint. The Court granted that motion in part and dismissed the original complaint as to Defendants Goord and Zon, because Plaintiff did not allege facts showing their personal involvement. In addition, the Court dismissed the Fourteenth Amendment due process and Eighth Amendment claims without prejudice, granting Plaintiff leave to re-plead the Eighth Amendment and Fourteenth Amendment due process claims. Plaintiff filed an amended complaint (# 15) which was docketed on August 4, 2006. In pertinent part, he alleges as follows:

---

[1]The ninth month of the year in the Muslim calendar; the fast from sunrise to sunset that is observed during Ramadan. Webster's II New College Dictionary, (Houghton Mifflin Company, 1995), at 916.

[2]The Court's prior decision mistakenly referred to a sentence of 77 days.

FEBRUARY 5, 2005

31. The night before February 5, 2004, the plaintiff received (from the facility) his Sahour meal which consisted of two milks, 6 slices of bread, 6 sugars, and either 4 slices of cheese, or 2 eggs, or 1 hot, or two cold cereals.

32. This meal was consumed well before 5 a.m., and no other food or drink would be allowed (according to the tenets of fasting) from sunrise until sunset.

33. At about 2 p.m. on November 20th, 2003, Correction Officer J. Barbara (from herein, "Barbara") ordered the plaintiff to undergo a urine test.

34. The plaintiff went with the officer to the bathroom to comply, but could not produce a urine sample.

35. The plaintiff explained to the officer that he was fasting, and that he had been at work all day and was "parched", and thus could not provide a urine sample.

36. At about 3 p.m., the officer offered the plaintiff some water, but the plaintiff told him that he could not drink water during the fast. But that after sunset, he could drink water and produce a urine sample. He (the plaintiff) then asked the officer could the three hours run from that point.

37. The officer said that the three hour period began from the moment of notification (which was about 2 p.m.), and that either the plaintiff drink water and provide the sample, or wait the three hours and pray that he gives a sample. Otherwise, at the end of the three hours he would receive a ticket for not complying.

38. The plaintiff asked the officer to contact the facility Islamic Chaplain, but the officer refused.

39. At about 4:15 p.m., which was about 30 minutes before the plaintiff could break his fast, Barbara brought another cup of water to the plaintiff, and said "is your religion worth 90 days in the hole?". He said this while offering the water to the plaintiff.

40. To this, the plaintiff simply stated, "I'm Fasting", and asked for 30 minutes—until the time of breaking the fast—when he could drink water,—AND significant time thereafter to produce a sample.

41. At about 5:15 p.m., the officer informed the plaintiff that his time to produce the sample had expired, and it was now, considered a refusal to comply with a direct order (see, Exhibit - F).

42. At that point, the officer began to escort the plaintiff to his cell for confinement pending a hearing.

43. The officer and the plaintiff happened upon the facility Islamic Chaplain. The plaintiff was allowed to explain to the Chaplain what had transpired.

44. After an "exchange" between the officer and the Chaplain, the Chaplain told the plaintiff that he would contact the watch commander that evening, and the administration in the morning concerning the issue.

45. A ticket was issued that night (Exhibit - E), and after review by a supervisor, the plaintiff was keeplocked pending a tier hearing.

46. On 11/25/05, a tier hearing was held. The plaintiff requested the Imam to be called as a witness, but this request was refused (Exhibit - F).

47. The plaintiff needed the Imam to testify to the fact that the observance of the fast of Ramadan prohibited Muslims from showing their private parts, or drinking water during the day-light hours (Exhibit - I).

48. This is significant because the Islamic Chaplain is mandated by directive to clarify any misconceptions regarding the religious practices of Islam, and to help provide information for the resolution of any conflicts between First Amendment protections, and the safety and security of the facility (Exhibit - D).

49. Not being able to effectively present his case, the plaintiff was found guilty (Exhibit - G). However, he was eventually released after 77 days (Exhibit - K). It is interesting to note that Superintendent Zon, who had personally been made aware of the situation by the facility Imam within one week of the incident, didn't act until 60 days later. And even then he did not dismiss the ticket (Exhibit J page ___ ), even though his decision (Exhibit - J page ___ ) implied that the plaintiff was not in error.

(Am. Compl. ¶¶ 31-49.) Plaintiff makes the following legal claims:

79. As a FIRST CAUSE OF FACTION, the plaintiff submits that his right to practice his religion, which is protected by the First Amendment, was violated for the reasons stated within paragraphs 1-78, and asks for relief as requested below.

80. As a SECOND CAUSE OF ACTION, the plaintiff submits that his 14th Amendment right to Due Process was violated for reasons outlined in Paragraphs 1-79, and asks this Court for the relief requested below.

81. As a THIRD CAUSE OF ACTION, the plaintiff maintains that he was

>subjected to Cruel and Inhumane punishment, in violation of the 8th Amendment, as outlined in paragraphs 1-80, and asks for the relief requested below.

(Am. Compl. ¶¶ 79-81.) Plaintiff seeks a declaratory judgment, injunctive relief, and money damages. He names as defendants Commissioner Goord[3], Superintendent Zon, the watch commander, the hearing officer and Correctional Officer Barbara. (Am. Compl. ¶¶ 60-78.)

Defendants now move for dismissal as to the Eighth Amendment claim against all defendants with prejudice, and for the dismissal of the complaint as to Defendants Goord and Zon. On the Eighth Amendment claim, Defendants argue that even in his amended complaint, Plaintiff has again failed to allege any set of facts that would satisfy either prong of the Eighth Amendment analysis. With respect to Defendants Goord and Zon, Defendants assert that as a result of the Court's prior Decision and Order, neither is a current defendant in this case, and Plaintiff has again failed to allege any personal involvement by them.

## STANDARDS OF LAW

*Pro Se Complaint*

Inasmuch as Plaintiff is proceeding *pro se*, this Court must follow the requirements of the Second Circuit, which has held:

---

[3]"Brian Fischer was appointed Acting Commissioner of the New York State Department of Correctional Services by Governor Eliot Spitzer effective January 1, 2007. The state Senate unanimously confirmed him on March 12, 2007." Commissioner Brian Fischer's Biography (*available at* http://www.docs.state.ny.us/bfbio.htm (last accessed June 5, 2007)). Commissioner Glenn Goord retired in August 2006. Association of State Correctional Administrators Newsletter "Corrections Directions," July - August 2006 (available at http://www.correctionhistory.org/html/chronicl/goord/goordfarewells.html (last accessed June 5, 2007)). The Court will not substitute Mr. Fischer for Mr. Goord in this litigation, *see* Fed. R. Civ. P. 25(d), since Mr. Goord was not sued in his official capacity because of the Eleventh Amendment prohibition.

> A pro se complaint should not be dismissed unless "it appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering motions to dismiss a pro se complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). This is especially true when dealing with pro se complaints alleging civil rights violations. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). Accordingly, the plaintiffs' allegations in this case must be read so as to "raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145-146 (2d Cir. 2002).

### *Rule 12(b)(6) Standard*

Recently, the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to

render the claim plausible[,]" as opposed to merely conceivable.) When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

*Personal Involvement*

A prerequisite for liability under a § 1983 claim is personal involvement by the defendants in the alleged constitutional deprivation. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). Such involvement on the part of a supervisory official may be shown in one of several ways:

> if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

*Sealey v. Giltner*, 116 F.3d at 51 (citing *Williams v. Smith*, 781 F.2d at 323-24).

*Eighth Amendment*

"An official violates the Eighth Amendment prohibition against cruel and unusual punishment when two requirements are met." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). First, in order to reach a constitutional dimension, the alleged punishment must be found to be "'objectively, sufficiently serious.'" *Boddie*, 105 F.3d at 862 (quoting *Farmer*

*v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed.2d 811 (1994)); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (same). "'Under the objective standard, conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.'" *Boddie*, *supra* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.2d 59 (1981)). Generally, in order to warrant constitutional protection, a prisoner must have been "den[ied] the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed.2d 271 (1991) (quotations omitted). "Second, the prison official involved must have a 'sufficiently culpable state of mind.'" *Boddie*, *supra* (quoting *Farmer*, *supra*). That means that "the prison officials must have acted with deliberate indifference, in that they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Branham v. Meachum*, 77 F.3d 626, 631 (2d Cir. 1996) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quotation omitted), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed.2d 1074 (1995)).

**DISCUSSION**

Defendants first seek to dismiss Plaintiff's Eighth Amendment claim entirely. In its prior Decision and Order, *Holland v. Goord*, No. 05-CV-6295 (W.D.N.Y. Jul. 13, 2006), at 13, the Court determined that, "Plaintiff's Eighth Amendment claim is likewise dismissed. Plaintiff alleges no facts which would satisfy either the objective or subjective prong of the standard stated above." In the amended complaint, Plaintiff alleges that while in keeplock, his food was inadequate:

> 55. In fact, the trays that were given were considered punishment trays by the facility because they purposely limited the person's diet to the bare minimum. And when compared to the rest of the inmate population, the food was atypical

> and deficient. For instance, hot and cold servings were placed in the same tray (measuring approximately 7" X 4" X 2"), while the general population received portions that were two to three times the portions which the plaintiff received….
>
> 57. I lost 25 LBS, and was hungry all the time, which resulted in chronic and severe headaches and chronic and severe gastric irritability from the disciplinary trays I received, which also caused chronic cases of Diarrhea.

(Am. Compl. ¶¶ 55, 57.)

Defendants' argument in support of their motion to dismiss the Eighth Amendment claim does not answer the allegation that Plaintiff was inadequately fed, resulting in a significant loss of weight. Plaintiff has amplified his claim with some factual allegations, rendering it plausible. Plaintiff has referred to the food provided as a punitive tray, that it contained one-half to one-third of the amount of food provided to the general population, and the Court, upon liberally reading the complaint, construes the amended complaint to therefore allege scienter. *See Phelps v. Kapnolas,* 308 F.3d 180 (2d Cir. 2002). Consequently, this cause of action may go forward.

With respect specifically to Goord and Zon, Defendants argue that since both have already been dismissed, they are no longer parties. While the Court's prior decision found that Plaintiff had failed to allege sufficient facts to show that either Goord or Zon was personally involved in the alleged constitutional violations, the Court permitted Plaintiff to replead his causes of action, and, he has now done so. No judgment was entered for either defendant. Accordingly, the Court will consider the amended complaint against both Goord and Zon.

In his amended complaint, Plaintiff alleges that former Commissioner Goord failed to address a long-standing problem with regard to fasting Muslum inmates and urine testing, and that he failed to provide guidance to his subordinates on this issue. (Am. Compl. ¶ 64.) Consequently, Plaintiff has alleged facts supporting his allegation of Goord's personal involvement by allowing a custom or policy resulting in alleged constitutional violations to continue after learning of it, or through negligent supervision of his subordinates. The allegations against Superintendent Zon are even more specific. Plaintiff alleges that,

> Superintendent Zon was able to set local policy and procedures relative to the taking of urine samples of fasting inmates during the month of Ramadan, but failed to do SO. He was also aware of the long standing problem of retrieving urine samples from Fasting (and thus, dehydrated) inmates during the month of Ramadan, but failed to act . . . .
>
> He also took over 60 days to release a decision that was already made within 21 days of the incident. This is even more oppressive in light of the fact that the Islamic Chaplain made staff fully aware of the solution (Exhibit - I); a solution which was eventually adopted by the Superintendent (Exhibit - J page ___ [sic]) , and Albany (Exhibits K and L).

(Am. Compl. ¶¶ 68-69.) The Court determines that Plaintiff's factual allegations are enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. Accordingly, at this stage of the litigation, the Court will permit the case to go forward as plead against all defendants, noting that Plaintiff must still identify those defendants listed only by title and move to amend the amended complaint to include those individuals' names. *See, Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir.1993) (stating that "'John Doe' pleadings" can "be used to circumvent statutes of limitations" where "all the specifications of Fed. R. Civ. P. 15(c) are met").

**CONCLUSION**

Defendants' motion (# 16) to dismiss the amended complaint is denied.

It Is So Ordered.

DATED:   September 21, 2007
         Rochester, New York

                         ENTER.

                         /s/ Charles J. Siragusa
                         CHARLES J. SIRAGUSA
                         United States District Judge