UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARRYL HOLLAND,

              Plaintiff,

    -vs-

GLENN GOORD, in his individual capacity,
BRIAN FISCHER, in his official capacity
as Commissioner Department of
Correctional Services, ANTHONY F. ZON, in
both his individual and official capacity
as former Superintendent, Wende
Correctional Facility, THOMAS
SCHOELLKOPF, in both his individual and
official capacity as Hearing Officer,
Wende Correctional Facility, JOHN
BARBERA, in both his individual and
official capacity as Correctional
Officer, Wende Correctional Facility, JAY
WYNKOOP, in both his individual and
official capacity as Watch Commander
and/or Keeplock Review Officer, Wende
Correctional Facility, and MARTIN
KEARNEY, in both his individual and
official capacity as Captain, Wende
Correctional Facility,

              Defendants.

**DECISION AND ORDER**

No. 05-CV-6295(MAT)

---

## I. Introduction

Darryl Holland ("Holland" or "Plaintiff"), acting pro se, instituted this action pursuant to 42 U.S.C. § 1983 against Defendants alleging violations of his rights under the First Amendment of the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

The Court (Siragusa, D.J.) appointed counsel to represent Plaintiff.

On June 16, 2010, Defendants submitted the declarations of two employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), Dr. Lester Wright and Captain Stephen Casaceli, in support of Defendants' motion for summary judgment dismissing the complaint. Plaintiff, on July 23, 2010, filed a motion (Dkt #77) to have the Declaration of Dr. Lester Wright ("the Wright Declaration") and the Declaration of Captain Stephen Casaceli ("the Casaceli Declaration") stricken because Defendants never identified Dr. Wright or Captain Casaceli in their disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure ("F.R.C.P.") and never supplemented their Rule 26 disclosures to add Dr. Wright or Captain Casaceli as potential witnesses.

Plaintiff additionally notes that in his first set of interrogatories served on October 10, 2008, he asked Defendants to identify "all persons with knowledge concerning the allegations and/or defenses raised in the Second Amended Complaint and/or the Defendants' Answer to the Second Amended Complaint[.]" Exhibit ("Ex.") 2 to Dkt. #77-2. In their February 2009 response to the October 2008 interrogatories, Defendants referred Plaintiff to their earlier Rule 26 disclosure, which did not name Dr. Wright or Captain Casaceli.

Also in the first set of interrogatories, Plaintiff asked Defendants to reveal the names of their expert witness(es). Defendants responded that "at this time, no expert is anticipated." Ex. 3 to Dkt #77-2.

Defendants have opposed Plaintiff's motion to strike in a Declaration submitted by their attorney, Gary Levine, Esq. (Dkt #84), who filed a Notice of Appearance in this action on February 2, 2010. Attorney Levine argues that because the Wright Declaration and the Casaceli Declaration do not assert facts about Plaintiff or the incident at issue, and are used solely to support the constitutionality of the challenged prison directive, Dr. Wright or Captain Casaceli are neither fact nor expert witnesses within the meaning of Federal Rule of Evidence ("F.R.E.") 701 and 702, respectively.

Plaintiff has submitted a Reply (Dkt #86), characterizing Defendant's response as "curious" and arguing that it "ignores both the fact that F.R.C.P. 26 requires disclosures of *all* witnesses who may have discoverable information that the disclosing party may rely upon to support its defenses, and the fact that Plaintiff expressly asked for the identity of individuals with discoverable information." Dkt #86 at 2 (emphasis supplied). Plaintiff notes that if Dr. Wright and Captain Casaceli do not have discoverable information, then striking their declarations will not prejudice Defendants. Id. n.1.

This matter was transferred to the undersigned on October 19, 2012.

**II. Discussion**

F.R.E. 701 was amended in 2001 "to provide that testimony cannot be received as lay opinion if it is based on scientific, technical, or other specialized knowledge." United States v. Garcia, 413 F.3d 201, 215 (2d Cir. 2005) (citing FED. R. EVID. 701(c)). F.R.E. 701(c)'s purpose is to "prevent a party from conflating expert and lay opinion testimony" and thereby "confer[] an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in [F.R.E.] 702 and the pre-trial disclosure requirements set forth" in F.R.C.P. 26. Garcia, 413 F.3d at 215.

Under F.R.C.P. 26, "a party must 'disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705,' and must make such disclosures 'at the times and in the sequence that the court orders.'" DVL, Inc. v. Niagara Mohawk Power Corp., No. 11-26-cv, 2012 WL 3125570, at *2 (2d Cir. Aug. 2, 2012) (quoting FED. R. CIV. P. 26(a)(2)(A) & (D)). F.R.C.P. 37(c) states that "[i]f a party fails to . . . identify a witness as required by [F.R.C.P.] 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless

the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c).

Pursuant to the Amended Scheduling Order issued by the Court (Siragusa, D.J.) dated September 18, 2008, Defendants were to identify any expert witnesses by December 8, 2008. See Dkt #50. Expert discovery was to be completed by February 11, 2009. See id. At no time prior to December 8, 2008, did Defendants identify Dr. Wright or Captain Casaceli as expert witnesses. Furthermore, Defendants have not sought an extension of time to identify an expert witness in this matter.

Pursuant to a further Amended Scheduling Order dated March 15, 2010, all discovery in this matter was to completed on or before April 30, 2010. See Dkt #65. The names of Dr. Wright and Captain Casaceli were not mentioned until Defendants submitted these individuals' Declarations in support of the June 2010 summary judgment motion, nearly two months after the completion of discovery and nearly two years after the deadline for disclosing the names of any expert witnesses. A scheduling order may be modified based upon a showing of good cause, F.R.C.P. 16(b)(4), but Defendants have not requested such relief, and, indeed, "good cause" is patently missing from the record.

Defendants suggest, without any legal support, that Dr. Wright and Captain Casaceli are neither fact witnesses nor expert witnesses, but instead are a third species of witness who are

-5-

exempt from the strictures of the Federal Rules of Civil Procedure and the deadlines imposed by the Court's scheduling orders. This argument is unfounded in law or in fact.

First, with regard to Dr. Wright, it is apparent that he is being offered as an expert witness. However, he has not provided the required expert report or the basis for his opinion that human beings regularly and consistently produce urine while fasting. Plaintiff has submitted a scholarly article suggesting an opinion contrary to that offered by Dr. Wright from *The British Journal of Nutrition*, titled "Effects of Fasting During Ramadan on Urinary Excretion in Malaysian Muslims." Ex. 4 to Dkt #77-2. In the article, the authors conclude, <u>inter alia</u>, that the "urine output during the afternoon was depressed significantly throughout the fasting period[.]" <u>Id.</u> The Court agrees with Plaintiff that, contrary to Defendants' assertion, the topics discussed in the Wright Declaration and Dr. Wright's opinion are not matters of "common knowledge".

The Court turns next to Captain Casaceli, who is employed at Wende Correctional Facility and asserts that he is familiar with DOCCS' policy regarding and use of urine testing to screen for illegal drugs.[1] He states, <u>inter alia</u>, that "[u]pon information and

---

[1] DOCCS' Directive 4937(IV)(D)(4) describes the procedure when an inmate is unable to immediately provide a urine specimen. The directive states the inmate "shall be detained until (s)he is able to provide a urine specimen. Drinking water should be available in

belief, the human body continuously produces urine and therefore inmates, even those fasting, should be able to provide a urine sample within three (3) hours". Dkt #73 at 2. He also asserts that an exception to the three-hour time limit to accommodate inmates fasting during Ramadan is unnecessary because there is "no known problem for inmates observing the Ramadan fast being unable to comply with providing a urine sample" and providing for such an exception would be "administratively difficult and costly" and "also might effect [sic] the test results." Id. at 3. According to Captain Casaceli, the full financial impact of creating an exception to the directive would be at least $71,000. Captain Casaceli asserts that it would create administrative problems because when a urine test is ordered, the corrections officers do not know which inmates are fasting Muslims and which of the fasting, Muslim inmates will be unable to provide a urine sample. Captain Casaceli asserts that a proposed exception would have to be extended to all fasting inmates, not just Muslim inmates, thereby increasing the administrative difficulties. Captain Casaceli predicts that if an exception was implemented, "more inmates would attempt to take advantage of the exception to the rule". Captain Casaceli asserts that "[u]pon information and belief, the longer

---

an amount not to exceed eight (8) ounces per hour. An inmate who is unable to provide a urine specimen within three (3) hours of being ordered to do so shall be considered to be refusing to submit the specimen." Dkt #72, ¶ 5.

the delay in obtaining the urine sample, the less likely it becomes that the urine test will detect the presence of drugs."[2] Id.

"[T]estimony cannot be characterized as lay [testimony] if it is based on experience, training or specialized knowledge rather than on the particularized, personal knowledge of the witness." Giles v. Rhones, No. 94 Civ. 6385 (CSH), 2000 WL 1425046, at *7 (S.D.N.Y. Sept. 27, 2000) (citing Advisory Committee Notes to amendment to F.R.E. 701). If the witness's testimony "result[ed] from a process of reasoning familiar in everyday life," it is permissible lay opinion testimony under F.R.E. 701. United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007) (quoting FED. R. EVID. 701, advisory committee's note to 2000 amend. (quoting State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992); footnote in Rigas omitted)). "A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise. . . .'" Id. (quoting Bank of China, New York Branch v. NBM LLC, 359

---

[2] The multitude of studies on this topic have reached differing results. In general, the studies find that metabolites of marijuana are detectable in urine tests for several days to many weeks after the last use, depending upon the individual and how heavy his or her usage is. See http://www.ndci.org/sites/default/files/ndci/THC_Detection_Window_0.pdf. None of the studies cited in this article indicated that marijuana metabolites are undetectable after the passage of a few hours.

F.3d 171, 181 (2d Cir. 2004)). If, however, the witness's testimony is "not a product of his investigation, but rather reflect[s] [his] specialized knowledge," then it is impermissible expert testimony. Bank of China, 359 F.3d at 182; see also id. at 181 ("The admission of this testimony pursuant to [F.R.E.] 701 was error because it was not based entirely on [the witness]'s perceptions; the District Court abused its discretion to the extent it admitted the testimony based on [the witness]'s experience and specialized knowledge in international banking.").

Applying this distinction, the Court finds that Captain Casaceli's testimony is that of an expert. Like Dr. Wright, Captain Casaceli knows nothing about the facts of this case and was not involved in the incident at issue. His declaration, which is based on his experience as a corrections officer and "familiar[ity] with DOCS policy and use of urine testing," Dkt #84 at 1, is "paradigmatic expert testimony," Giles, 2000 WL 1425046, at *7 ("Connolly regards himself as an expert on the matter of DOCS and Sing Sing security procedures. Defendants suggest that Connolly will testify about policies and procedures on the use of force in the New York State DOCS, knowledge which he has acquired in his over 20 years with that agency. That is paradigmatic expert testimony."). In addition to DOCCS' policies and procedures regarding urine testing, Captain Casaceli has offered opinions regarding prison staffing requirements, corrections officer' wages

and overtime, and has made conclusions regarding the system-wide administrative impact of Plaintiff's request for an exception to three-hour time-limit for conducting urine tests. Moreover, Captain Casaceli has offered opinions overlapping those offered by Dr. Wright, so he also purports to present expert medical knowledge. This is highly improper.

Because both Dr. Wright's and Captain Casaceli's declarations are properly characterized as "expert", the strictures of F.R.C.P. 26(a) apply. It is not disputed that Defendants have failed to comply with their disclosure obligations. They have not provided reports by either Dr. Wright or Captain Casaceli, and they did not disclose these individuals' identities until they filed their summary judgment motion nearly two years after the date for disclosing experts expired.

Pursuant to F.R.C.P. 37(c), "[i]f a party fails to provide information or identify a witness as required by [F.R.C.P.] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*." FED. R. CIV. P. 37(c)(1) (emphasis supplied). Defendant's counsel asserts that he did not act in bad faith, but he has not attempted to make a showing as to why the failure to comply with F.R.C.P. 26 was "substantially justified" or harmless.

Even if Captain Casaceli is considered a fact witness, Defendants still are in violation of the Court's most recent scheduling order, which provided that all fact discovery must be completed by April 30, 2010. F.R.C.P. 16(f) provides that on motion or sua sponte, the district court "may issue any just orders, including those authorized by [F.R.C.P.] 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C).

Where, as here, a party fails to disclose information in response to discovery demands, fails to explain such failure, and never asks to reopen discovery, a court does not abuse its discretion in precluding the evidence. Haas v. Delaware and Hudson Ry. Co., No. 07-1198-cv, 282 Fed. Appx. 84, 86-87, 2008 WL 2566699 at *2-3 (2d Cir. June 24, 2008) ("Although the late discovery of Sheehan's information was apparently due to plaintiff's counsel's neglect and not 'bad faith,' bad faith is not required [for preclusion] and counsel has offered no adequate explanation for this untimely disclosure.").

As Plaintiff points out, Defendants' proposed remedy of providing additional time to depose Dr. Wright and Captain Casaceli ignores the time and expense involved in conducting not only these belated depositions but also the costs associated in securing expert witnesses to respond to Defendants' witnesses' testimony. It is Defendants' burden to show substantial justification for

their failure to comply with their discovery obligations or that their nondisclosure was harmless. This they have not done. Therefore, the declarations of Dr. Wright and Captain Casaceli are stricken.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion (Dkt #77) to strike the declarations of Dr. Wright and Captain Casaceli. Accordingly, the declaration of Dr. Wright (Dkt #72) and the declaration of Captain Casaceli (Dkt #73) are hereby stricken and shall not be considered in connection with Defendants' motion for summary judgment or in any other pending motion or at trial.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: Rochester, New York
December 20, 2012